### 27580. PHILLIPS *v.* ABLESON.

DECIDED SEPTEMBER 9, 1939.

*W. E. & W. G. Mann,* for plaintiff. *D. W. Mitchell,* for defendant.

SUTTON, J. Joe Phillips sued out an attachment against Frank Ableson trading as Alabama Novelty House, and alleged in the declaration in attachment that the defendant was indebted to him $1500 on a certain contract, a copy of which was attached to the declaration; that under the terms of this contract he was to receive as a commission fifteen per cent. on sheets and pillow-cases sold by him, and a commission of twenty per cent. on all other goods sold by him; that he had sold certain goods, a list of which was attached, and had complied with the contract, but the defendant had paid him only a five per cent. commission thereon and refused to pay him the additional fifteen per cent. The defendant answered and denied that he was indebted to the plaintiff in any sum. On the trial the court directed a verdict for the defendant. The exception is to the judgment overruling the plaintiff's motion for new trial. The contract sued on provided, among other things, that the plaintiff was to be allowed a commission of fifteen per cent. on sheets and pillow-cases and twenty per cent. on all other goods sold, unless otherwise specified on each lease or time sale; that "the employee during the period of his employment shall receive from the employer monthly an itemized statement of his account with the employer;" that "it is further understood and agreed that the monthly statements shall be deposited in the mail, properly addressed and stamped, which shall be held to be delivery to the salesman herein; that unless written objection be made within ten days thereafter, the same shall be held to be an account stated, and all objections shall be in writing, copy of which

is to be retained by the salesman as the evidence thereof." The plaintiff testified that he received from the defendant each month the monthly statements referred to in the contract, together with a check for commissions, and that he accepted the checks and made no written objections to the statements. So, under the terms of the contract, the monthly statements thus furnished became an account stated between the parties. "An account stated is an agreement between persons who have had previous transactions, fixing the amount due in respect of such transactions, and promising payment." *Ward* v. *Stewart*, 103 *Ga.* 260, 262 (3) (29 S. E. 872); *Moore* v. *Hendrix*, 144 *Ga.* 646 (87 S. E. 915); *Borders* v. *Gay*, 6 *Ga. App.* 734 (65 S. E. 788). Bouvier defines an account stated as "An agreed balance of accounts. An account which has been examined and accepted by the parties." An account stated establishes the creditor's claim and entitles him to bring an action on it as a liquidated demand; and in the absence of fraud or mistake an account stated is conclusive upon the parties. Our statute declares: "A party objecting to a stated account shall surcharge and falsify. The former is to allege omission; the latter is to deny the correctness of certain of the items rendered. One palpably fraudulent item casts suspicion upon the entire account." Code, § 37-306.

The plaintiff makes no effort in his pleadings to set out the account stated and to then point out clear and palpable mistakes therein or omissions; but he undertakes to open up all of the transactions between the parties during the existence of the contract from March 25, 1936, to July 27, 1937, by setting out what he claims to be a list of goods sold and payments. "When an account has become stated, the party rendering the same is bound thereby, unless he shows that there has been a clear and palpable mistake in the account, or an omission of items is clearly and satisfactorily established; and this must be done to the same extent and with the same degree of certainty that courts of equity require in order to correct mistakes." *Tate* v. *Gairdner*, 119 *Ga.* 1133 (2) (46 S. E. 73). See *Trippe* v. *Wynne*, 76 *Ga.* 200. It appears from the evidence that the plaintiff for about fifteen months received the monthly statements and checks from the defendant, and made no written objection thereto as provided by the contract sued on, and that on the expiration of this contract he

made another contract with the defendant whereby he was to receive five per cent. commission on goods sold by him. It was held in *Gleaton* v. *Georgia National Bank*, 21 *Ga. App.* 100 (93 S. E. 1023): "Where an account is stated by the creditor, and the debtor gives his promissory note in settlement, and is grossly negligent in failing to inform himself as to the elements of the account, he will not be allowed to plead, as a defense to an action upon the note, that certain items in the account, for which he was not legally liable, were fraudulently placed therein, where his plea does not show that any trick or artifice was used to prevent him from discovering the fraud." The plaintiff testified that he read the contract sued on, and understood what was in it before he signed it; and that he kept a record of the goods he sold. He knew or should have known when he was receiving the monthly statements and checks whether they were correct. "A party will not be allowed to impeach an account stated, on the ground of fraud or mistake, if he assented to it with full knowledge of the facts and circumstances attending it, or if, with ample means of knowledge at hand, he failed to ascertain the facts." 1 C. J. S. 131, § 51 (d). Under the law and the evidence the court did not err in directing the verdict, and did not err in overruling the plaintiff's motion for new trial.

*Judgment affirmed. Stephens, P. J., and Felton, J., concur.*